IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSHUA PAYNE, | : Civil No. 1:22-CV-1517 |
| Plaintiff, | : |
| v. | : (Judge Munley) |
| | : |
| BRAD RITCHEY, et al., | : (Chief Magistrate Judge Bloom) |
| Defendants. | : |

<u>REPORT AND RECOMMENDATION</u>

I.  <u>Introduction</u>

This is a prisoner civil rights lawsuit filed by the *pro se* plaintiff, Joshua Payne, an inmate incarcerated in the Pennsylvania Department of Corrections ("DOC") at the State Correctional Institution at Camp Hill ("SCI Camp Hill"). (Doc. 1). Payne's second amended complaint asserts claims against two correctional defendants—Unit Manager Brad Ritchey and Correctional Officer Ressler arising out of a misconduct issued to Payne which resulted in him losing 14 days of commissary privileges. (Doc. 37-1). Payne brings his claims pursuant to 42 U.S.C. § 1983, alleging that he was retaliated against for filing grievances in violation of the First Amendment, that his due process rights under the Fourteenth Amendment were violated, and that these defendants

engaged in a conspiracy to deprive him of his civil rights. (*Id.*).

The parties have now filed cross-motions for summary judgment, each contending that they are entitled to judgment as a matter of law. (Docs. 45, 57). After consideration, we will recommend that Payne's motion for summary judgment be denied, and that the defendants' motion for summary judgment be granted.

II. Background

Payne's claims arise out of his incarceration at SCI Camp Hill in July of 2022. Thus, the second amended complaint asserts that on July 18, 2022, Payne signed up for yard time but was denied the opportunity to go to yard by Sergeant Timpe.[1] (Doc. 37-1 ¶¶ 7-9). Payne claims that Timpe denied his yard time because Payne failed to stand for count several days earlier. (*Id.* ¶ 9). Payne filed an inmate grievance regarding the denial of yard time. (*Id.* ¶ 14).

Payne then alleges that several days later, on July 23, he was again denied yard time. (Doc. 37-1 ¶ 16). He contends that Timpe told him that

---

[1] Timpe was named as a defendant in Payne's first amended complaint but has since been dismissed from this action. (*See* Doc. 32).

2

he was being denied yard because he had filed a grievance, and further, that he would be receiving a misconduct for failing to stand for count several days earlier. (*Id.*). Payne was ultimately issued a misconduct by Defendant Ressler for his failure to stand for count on July 18. (*Id.* ¶¶ 30-31).

On July 25, Defendant Ritchey went to Payne's cell to informally resolve the misconduct issued for Payne's failure to stand for count.[2] (*Id.* ¶ 19). Payne complained that he never received notice of the misconduct. (*Id.* ¶ 20). According to Payne, Ritchey informed him that he did not care if Payne received notice, that he was taking Payne's commissary privileges, and that he was doing so because Payne filed a grievance against his officers. (*Id.* ¶ 21). Additionally, Ritchey allegedly told Payne that he did not want to hear Payne's version of events and denied Payne's request for a second staff member to be present for the informal resolution in violation of prison policy. (*Id.* ¶¶ 22-23). Payne asked for a formal misconduct hearing, rather than the informal resolution, and

---

[2] DC-ADM 801, the DOC's policy regarding inmate discipline, provides for the informal resolution of certain levels of inmate misconducts. *See* Doc. 47-5 at 18-20).

3

Ritchey allegedly threatened to "make sure" that Payne would receive 90 days for the misconduct charge if he were to go in front of the hearing examiner. (*Id.* ¶¶ 24-25). Payne claims that he signed the informal resolution because of this threat made by Ritchey. (*Id.* ¶ 26). After the informal resolution, Payne spoke to Defendant Ressler, the correctional officer who issued the misconduct, who allegedly informed Payne that he had a target on his back and was issued the misconduct because he filed a grievance about being denied yard time. (Doc. 37-1 ¶¶ 30-31).

The record indicates that Payne did, in fact, file a grievance regarding the denial of yard time. (Doc. 47-1). Payne's initial grievance claimed that he was denied yard time on July 18 because he did not stand for count on July 16 and that he was threatened with a misconduct. (*Id.* at 2). The Initial Review Response indicates that Payne was denied yard on July 16 because he failed to comply with the officers when they arrived at his cell that day. (*Id.* at 3). The response further stated that failing to stand for count is a misconduct-level offense, and thus, what Payne perceived as a threat was merely the officers informing him of the potential consequences of failing to stand for count. (*Id.*). Payne appealed

4

this grievance to the Facility Manager and ultimately to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA"), at which time Payne's requested relief was denied. (*See generally* Doc. 47-1).

Payne attempted to appeal the informal resolution of his misconduct. (Doc. 47-2). The initial misconduct issued by Ressler on July 19 indicated that Payne refused several orders to stand for count, and Ressler referred the misconduct to informal resolution with the unit manager, Defendant Ritchey. (*Id.* at 2). The informal resolution paperwork is dated July 25 and indicates that Payne signed the informal resolution resulting in a loss of 14 days of commissary privileges. (*Id.* at 3). That same day, Payne filled out a misconduct hearing appeal form, in which he claimed that Ritchey violated procedure by failing to have a second staff member present at the informal resolution, and that he believed the misconduct was issued in retaliation for his filing a grievance about the denial of yard time. (*Id.* at 4). It is unclear from the record if Payne's appeal was ever filed or decided.

Payne initiated this action on September 28, 2022, and subsequently filed an amended complaint. (Docs. 1, 7). Payne's first

5

amended complaint asserted claims of First Amendment and due process violations, as well as a civil conspiracy claim against Ritchey, Timpe, and a John Doe defendant. (Doc. 7). The defendants filed a motion to dismiss (Doc. 21), which was granted in part and denied in part. (Docs. 30, 32). In an order dated June 29, 2023, Judge Mariani dismissed the First Amendment retaliation claim against Officer Timpe and the conspiracy claim but permitted the plaintiff to proceed on his procedural due process claim against Defendant Ritchey and his First Amendment retaliation claim against Ritchey and the John Doe defendant. (Doc. 32). Judge Mariani gave the plaintiff leave to amend his remaining claims. (*Id.*).

Payne filed his second amended complaint on November 9, 2023, which is currently the operative pleading. (Doc. 37-1). The second amended complaint asserts claims under the First and Fourteenth Amendments against Defendant Ritchey and Defendant Ressler, as well as a claim for civil conspiracy pursuant to 42 U.S.C. § 1983. (*Id.*). Payne contends that Ressler issued the misconduct in retaliation for Payne filing grievances, and that Ritchey retaliated against him and violated his due process rights with respect to the informal resolution of the

6

misconduct. (*Id.*). Payne also alleges that these defendants conspired with each other to violate Payne's civil rights. (*Id.*).

The parties have now filed cross-motions for summary judgment, each contending that they are entitled to judgment as a matter of law on these claims. (Docs. 45, 57). These motions are fully briefed and ripe for resolution. (Docs. 45-47, 56-60, 63-34). After consideration, we will recommend that the plaintiff's motion be denied, and that the defendants' motion be granted.

### III. Discussion

#### A. Motion for Summary Judgment – Standard of Review

The parties have filed cross-motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Rule 56(a) provides that a court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The materiality of the facts will depend on the substantive law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). Thus, "[o]nly disputes over facts that might affect the outcome of the suit under governing law" will

preclude summary judgment. *Id*. A dispute is only genuine if a reasonable juror could find in favor of the nonmoving party. *Id*.

The moving party bears the initial burden to "demonstrate the absence of a genuine issue of material fact," relying on pleadings, depositions, affidavits, and other evidence in the record. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant "successfully points to evidence of all of the facts needed to decide the case on the law," the nonmovant can still defeat summary judgment by pointing to evidence in the record which creates a genuine dispute of material fact and from which a jury could find in its favor. *El v. Southeastern Pennsylvania Transp. Auth. (SEPTA)*, 479 F.3d 232, 238 (3d Cir. 2007). However, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). A court may not make credibility determinations or weigh the evidence, but "must view the facts in the light most favorable to the non-moving party." *Hugh v. Butler County Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

When considering cross-motions for summary judgment, "the court

must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the summary judgment standard." *Marcinak v. Prudential Financial Ins. Co. of Am.*, 184 F. App'x 266, 270 (3d Cir. 2006). Thus, "[i]f review of cross-motions reveals no genuine issue of material fact, then judgment may be entered in favor of the party deserving of judgment in light of the law and undisputed facts." *Transguard Ins. Co. of Am., Inc. v. Hinchey*, 464 F. Supp. 2d 425, 430 (M.D. Pa. 2006) (citing *Iberia Foods Corp. v. Romeo*, 150 F.3d 298, 302 (3d Cir. 1998)).

### B. Payne's Motion for Summary Judgment should be Denied, and the Defendants' Motion for Summary Judgment should be Granted.

Payne asserts his claims pursuant to 42 U.S.C. § 1983, alleging violations of the First and Fourteenth Amendments and a conspiracy to do the same. After a review of the record, we conclude that there are no genuine issues of material fact with respect to these claims against the defendants. Accordingly, we recommend that Payne's motion be denied, and the defendants' motion be granted.

### 1. First Amendment Retaliation

Payne asserts his constitutional claims pursuant to § 1983. Section 1983 provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

*See* 42 U.S.C. § 1983. Therefore, "Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States." *See Shuman v. Penn Manor School Dist.*, 422 F.3d 141, 146 (3d Cir. 2005) (citation omitted). Section 1983 "does not create any new substantive rights but instead provides a remedy for the violation of a federal constitutional or statutory right." *See id.* (citation omitted).

To state a claim under Section 1983, a plaintiff must plead two elements: (1) the conduct complained of was committed by a "person"

acting under color of law; and (2) that conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *See Berg v. County of Allegheny*, 219 F.3d 261, 268 (3d Cir. 2000) (citation omitted); *Shaw by Strain v. Strackhouse*, 920 F.2d 1135, 1141–42 (3d Cir. 1990).

A prisoner alleging a claim of First Amendment retaliation must show (1) that he engaged in constitutionally protected conduct; (2) that he suffered an " 'adverse action' at the hands of prison officials"; and (3) that his constitutionally protected activity was "a substantial or motivating factor" in the decision to take adverse action. *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001) (citations omitted). If a plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to show "that it would have taken the same disciplinary action even in the absence of the protected activity." *Id.* (citing *Mount Healthy Bd. of Ed. v. Doyle*, 429 U.S. 274, 287 (1977)). In the prison context, the Third Circuit has recognized that "the task of prison administration is difficult," and thus, has reasoned that deference must be given to prison officials' decisions. *Id.* at 334. Prison officials may prevail on a plaintiff's

11

retaliation claim if they can show that the adverse action was taken "for reasons reasonably related to a legitimate penological interest." *Id.* Moreover, the Third Circuit Court of Appeals has cautioned that "First Amendment retaliation claims brought by inmates should be approached 'with skepticism and particular care' because such claims are easy to allege and difficult to prove." *Mack v. Yost*, 968 F.3d 311, 324 (3d Cir. 2020) (citations omitted).

Here, it is undisputed that Payne engaged in protected activity when he filed his grievance about being denied yard. *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (explaining that filing grievances ". . . implicates conduct protected by the First Amendment."). As to the second element, the filing of a false misconduct charge could amount to an adverse action sufficient to state a retaliation claim. *See Watson v. Rozum*, 834 F.3d 417, 423 (3d Cir. 2016) (finding that the issuance of a misconduct resulting in more than de minimis sanctions, such as change in housing assignment, placement in restricted housing, and a change in program level, was sufficient to show an adverse action); *Palmore v. Hornberger*, 813 F. App'x 68, 70 (3d Cir. 2020) (per curiam) (finding that

being issued misconducts was more than a "de minimis" adverse action).

However, with respect to the causation element, Payne failed to set forth evidence from which a reasonable factfinder could conclude that the issuance of the misconduct by Ressler, as well as Ritchey's informal resolution of the same, was causally connected to his grievance. Payne relies on the allegations in his amended complaint, as well as his own statements regarding the events, in which he contends that Ressler explicitly told him the misconduct was issued because he filed a grievance about being denied yard. (*See* Doc. 37-1 ¶¶ 30-31). However, in his deposition, Payne conceded that neither Ressler nor Ritchey ever told him they did not like when inmates filed grievances. (Doc. 58-2 at 17-18). In fact, Payne further stated in his deposition that Defendant Ritchey told him to "go ahead and file a grievance[.]" (*Id.* at 18).

It is well settled that "[a] pro se plaintiff may not ... rely solely on his complaint to defeat a summary judgment motion." *Layton v. Smith*, 2022 WL 17832548, at *3 (W.D. Pa. Dec. 21, 2022) (citing *Anderson*, 477 U.S. at 256; Fed. R. Civ. P. 56(e)). Here, other than Payne's self-serving allegations that the defendants told him he was being disciplined for

13

filing a grievance, there is no evidence in the record to show that Ressler issued, and Ritchey informally resolved the misconduct because Payne filed a grievance against Sergeant Timpe, who is no longer a defendant in this matter, about being denied yard. Rather, as we have noted, Payne's deposition testimony suggests the opposite conclusion—that neither defendant said anything to him about his filing of grievances. Accordingly, we cannot conclude that there is a genuine dispute of material fact as to Payne's First Amendment claim, and the defendants are entitled to summary judgment on this claim.

### 2. Due Process

Payne also asserts that his due process rights under the Fourteenth Amendment were violated because Ritchey conducted the informal resolution without a second staff member and refused to give Payne an opportunity to give his side of the events. He appears to assert that these actions violated the prison's policies set forth in DC-ADM 801, and thus, violate his due process rights.

At the outset, we note that, to the extent Payne is claiming a constitutional violation based on the violation of prison policy alone, such

14

a claim fails as a matter of law. Indeed, as one court in this district has aptly noted,

> [A] violation of prison policy is not equivalent to a constitutional violation. It is axiomatic that "a prison policy manual does not have the force of law and does not rise to the level of a regulation" and that "a violation of internal policy does not automatically rise to the level of a Constitutional violation."

*Washington v. Salamon*, 2022 WL 4096877, at *5 (M.D. Pa. Sept. 7, 2022) (Brann, C.J.) (quoting *Atwell v. Lavan*, 557 F. Supp. 2d 532, 556 n.24 (M.D. Pa. 2007)) (collecting cases). Thus, to the extent Payne's claims are based on Ritchey's alleged violations of DC-ADM 801, such claims fail.

Moreover, Payne has not shown that losing 14 days of commissary privileges because of the informal resolution violated his due process rights. The Fourteenth Amendment provides: "No state shall . . . deprive any person of life, liberty, or property, without due process of law . . ." U.S. Const. amend XIV. Prison disciplinary procedures that may result in a loss of good time credits have been held to implicate due process concerns. *See Wolff v. McDonnell*, 418 U.S. 539, 564 (1974); *Sup't, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985). However,

"'[d]iscipline by prison officials in response to a wide range of misconduct' is expected as part of an inmate's sentence[.]" *Milton v. Ray*, 301 F. App'x 130, 133 (3d Cir. 2008) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). Disciplinary actions such as placement in segregation or loss of commissary privileges "d[o] not amount to a hardship of sufficient magnitude to implicate a liberty interest[.]" *Id.*; *see also Salter v. Moslak*, 2019 WL 1242433, at *5 (M.D. Pa. Mar. 18, 2019) (dismissing due process claim based on loss of 180 days commissary privileges, as such a restriction did "not impose an atypical and significant hardship on Plaintiff relative to the ordinary limitations of prison life[.]").

Here, Payne's alleged injury is a loss of 14 days of commissary privileges. This is simply not the type of atypical and significant hardship that implicates a prisoner's due process rights. Accordingly, the defendants are entitled to summary judgment on this due process claim.

### 3. Civil Conspiracy

Finally, Payne asserts a civil conspiracy claim against Ressler and Ritchey, claiming that these defendants conspired to deprive him of his civil rights. To prove a conspiracy claim under § 1983, a plaintiff must

16

show "that persons acting under color of state law 'reached an understanding' to deprive him of his constitutional rights." *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 294 (3d Cir. 2018) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150-52 (1970)). Such a showing requires the plaintiff to establish "some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action." *Id.* (quoting *Capogrosso v. Supreme Court of N.J.*, 588 F.3d 180, 184-85 (3d Cir. 2009) (internal quotation marks omitted). "It is 'not enough that the end result of the parties' independent conduct caused plaintiff harm or even that the alleged perpetrators of the harm acted in conscious parallelism.'" *Eichelman v. Lancaster County*, 510 F. Supp. 2d 377, 393 (E.D. Pa. 2007) (quoting *Spencer v. Steinman*, 968 F. Supp. 1011, 1020 (E.D. Pa. 1997)).

Payne's conspiracy claim fails for two reasons. First, we have concluded that Payne has failed to establish a violation of his constitutional rights under either the First or Fourteenth Amendments. As such, the plaintiff cannot state a claim for conspiracy without establishing an underlying constitutional violation. *See Zucal v. County*

17

*of Lehigh*, 660 F. Supp. 3d 334, 355 (E.D. Pa. 2023). More fundamentally, however, Payne has failed to set forth any evidence showing that the two defendants came to any sort of meeting of the minds, as required for a conspiracy claim. In fact, Payne fails to include any allegations of an agreement between these two defendants, let alone provide evidence from which a reasonable juror could even infer such an agreement existed. Accordingly, Payne's conspiracy claim fails.

In sum, even viewing the facts in a light favorable to Payne, we cannot conclude that a reasonable juror could find in favor of Payne on these claims. Accordingly, we will recommend that Payne's motion for summary judgment be denied, and that the defendants' motion for summary judgment be granted.

## IV. Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the plaintiff's motion for summary judgment (Doc. 45) be DENIED and the defendants' motion for summary judgment (Doc. 57) be GRANTED.

The parties are further placed on notice that pursuant to Local Rule

72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 21st day of January 2025.

                                        *s/ Daryl F. Bloom*
                                        Daryl F. Bloom
                                        Chief United States Magistrate Judge